UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STELLA D. COULSTON,                                )
Individually and as Personal Representative of     )
the Estate of Walter E. Coulston, Jr.              )
    511 Malcolm Road                              )
    Vienna, Virginia  22180                       )
                                                   )
    and                                           )
                                                   )
WALTER COULSTON, SR.                               )
    511 Malcolm Road                              )
    Vienna, Virginia  22180                       )
                                                   )
        Plaintiffs,                           )   Case No. _____
                                                   )
    v.                                            )
                                                   )
WASHINGTON METROPOLITAN                            )
AREA TRANSIT AUTHORITY                             )
    600 Fifth Street, N.W.                        )
    Washington, D.C.  20001                       )
                                                   )
    Serve: Patricia Lee, Esquire                  )
           General Counsel, WMATA                )
           600 Fifth Street, N.W.                )
           Washington, D.C.  20001               )
                                                   )
    and                                           )
                                                   )
JOHN DOE                                           )
    600 Fifth Street, N.W.                        )
    Washington, D.C.  20001                       )
                                                   )
    Serve: Patricia Lee, Esquire                  )
           General Counsel, WMATA                )
           600 Fifth Street, N.W.                )
           Washington, D.C.  20001               )
                                                   )
    and                                           )
                                                   )
JOHN DOE 2                                         )
    600 Fifth Street, N.W.                        )
    Washington, D.C.  20001                       )
                                                   )

1

| | |
|---|---|
| Serve: Patricia Lee, Esquire | ) |
| General Counsel, WMATA | ) |
| 600 Fifth Street, N.W. | ) |
| Washington, D.C. 20001 | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT AND JURY DEMAND
(Wrongful Death: Negligence and Negligence *Per Se*)

COMES NOW Plaintiffs Stella Coulston, individually and in her capacity as personal and legal representative of the Estate of Walter Coulston, Jr. and Walter Coulston, Sr., by and through their attorney Karl J. Protil, Jr., and Shulman, Rogers, Gandal, Pordy & Ecker, P.A., and hereby sues Defendants, Washington Metropolitan Area Transit Authority ("WMATA"), John Doe, and John Doe 2, and states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Authority Compact (the "Compact"), which establishes original jurisdiction in this Court over WMATA matters pursuant to the Compact, Art. III § 4 and Art. XVI § 81, adopted in the District of Columbia Code at § 9-1107.10.

2. Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as the Defendant WMATA is located in this federal judicial district and routinely carries on business in the District of Columbia

## PARTIES

3. At all times relevant hereto, Decedent, fifty-seven (57) year old Walter Coulston, Jr. (hereinafter "Decedent", "Mr. Coulston"), was an adult resident of Vienna, Virginia.

4. At all times relevant hereto, and at the present, Stella Coulston ("Plaintiff," "Ms. Coulston") was, and is, an adult resident of Vienna, Virginia, residing at 511 Malcolm Road, Vienna, Virginia 22180. She is the natural mother of Mr. Coulston.

2

5. Ms. Coulston brings this action individually and in her capacity as the personal and legal representative of the Estate of Walter Coulston, Jr. having been appointed by the Circuit Court of Fairfax County, Virginia on November 2, 2017 (Fiduciary Number Fl-2017-0002056).

6. At all times relevant hereto, and at the present, Plaintiff Walter Coulston, Sr. ("Sr. Coulston") was and is an adult resident of Vienna, Virginia, residing at 511 Malcolm Road, Vienna, Virginia 22180. He is the natural father of decedent, Walter Coulston.

7. Mr. Coulston is survived by statutory beneficiaries, his mother, father, and adult daughter, Monique Wesley, of Fredericksburg, Virginia.

8. Defendant WMATA (hereinafter "Defendant" or "WMATA"), created effective February 20, 1967, is an interstate compact agency and, by the terms of its enabling legislation, is an agency and instrumentality of the District of Columbia, State of Maryland, and Commonwealth of Virginia.

9. Upon information and belief, and at all relevant times hereto, WMATA was the owner and operator of the Virginia Square Metro Station located at 3600 Fairfax Drive, Arlington, Virginia 22201 (hereinafter "the Metro Station").

10. Upon information and belief, the Metro Station was being managed, monitored, overseen, and run by WMATA employee station manager, John Doe. At all times relevant hereto, John Doe was acting within the scope of his employment and/or agency with WMATA, and WMATA is vicariously liable for all of his acts of negligence committed within the scope of his employment.

11. Upon information and belief, and at all times relevant hereto, WMATA was the owner and operator of all Metrorail trains that were being operated on July 13, 2017, including

Metrorail train #(first number unknown)173, that was being operated on the Orange Line and/or Silver Line (hereinafter "the Metrorail Train").

12. At all times relevant hereto, John Doe was an adult employee, agent, servant and/or ostensible agent of WMATA. John Doe was acting within the scope of his employment with WMATA in his position of Station Manager, and was responsible for the management and operation of the Metro Station on July 13, 2017 at the time of the incidents complained of that are the subject of this litigation. WMATA is vicariously liable for all of his acts of negligence that were committed within the scope of his employment.

13. At all times relevant hereto, John Doe 2 was an adult employee, agent, servant and/or ostensible agent of WMATA. John Doe 2 was acting within the scope of his employment with WMATA in his position as Metrorail Train Operator, and was responsible for the operation of the Metrorail Train on July 2017, at the time of the incidents complained of that are the subject of this litigation. WMATA is vicariously liable for all of his acts of negligence that were committed within the scope of his employment.

## FACTS

14. Mr. Coulston had a history of mental illness and depression.

15. During the evening of July 13, 2017, Mr. Coulston exited Metro train #7004 at the Metro Station and stepped onto the westbound platform.

16. Mr. Coulston did not leave the platform to exit the station, rather he remained on the platform. He was the only person present on the west bound platform at the Metro Station.

17. For approximately 8 minutes, 41 seconds, Mr. Coulston wandered around the westbound platform. He was the only passenger on the platform.

18. After approximately 4 minutes, 19 seconds on the platform, Mr. Coulston walked across the platform and stood very close to the edge of the platform, looking down at the train tracks below.

19. Mr. Coulston then sat on the edge of the platform with his legs dangling into the train track path. He remained sitting on the edge of the platform for approximately 20 seconds.

20. Mr. Coulston walked back across the platform to the paparet – a protective wall that runs along the outside edge of the platform on the opposite side from where the trains arrive. He leaned over the paparet looking down at the drop below and remained there for approximately 36 seconds.

21. Mr. Coulston then walked back across the platform and again sat down on the edge of the platform. He slid down and dropped into the train pathway and onto the train tracks.

22. Mr. Coulston laid down on the train track.

23. Mr. Coulston was on the tracks for approximately 2 minutes, 16 seconds.

24. After Mr. Coulston had been on the tracks for approximately 2 minutes, 16 seconds, Metro train (Train Number _173) arrived in the station.

25. Mr. Coulston sat up as incoming Metro Train #_173 approached the westbound platform to the Metro Station.

26. John Doe 2 did not stop the train and struck Mr. Coulston on the tracks, killing him.

27. Mr. Coulston was on the platform acting suspiciously for approximately 8 minutes, 41 seconds prior to lowering himself into the train pathway and onto the train tracks.

28. Mr. Coulston was on the train tracks for approximately 2 minutes, 16 seconds prior to being struck by the Metrorail Train.

29. The entire 11 minute, 17 second incident was observed, observable, and recorded on the Metro Station's security and surveillance video.

30. The safety and surveillance video was broadcast in the station manager's kiosk, and was to be monitored at all times by John Doe, station manager on duty at the time.

31. The safety and surveillance video was broadcast in the Railway Operation Command Center ("ROCC"), and was to be monitored at all times.

32. At no time while Mr. Coulston was present on the westbound platform of the Metro station, did an employee or agent of WMATA, including John Doe, make any attempt to assist or speak to Mr. Coulston, or to intervene when Mr. Coulston entered the train tracks.

33. John Doe made no attempt to notify the WMATA ROCC of Mr. Coulston's presence on the train tracks in order to stop any incoming train so that Mr. Coulston could be safely removed from the tracks.

34. At no time while Mr. Coulston was present on the westbound platform of the Metro Station or on the train tracks did John Doe appear on the westbound platform to investigate Mr. Coulston's strange behavior or intervene and remove him from the train tracks and out of the path of oncoming Metrorail trains.

35. At all times relevant hereto, prior to his being struck by the train, Mr. Coulston was easily visible on the surveillance video, which was to be monitored at all times by John Doe, or other employee and/or agent of WMATA, and to anyone who would have been present on the platform during the time Mr. Coulston was on the platform and down in the train tracks.

36. At no time did John Doe 2 attempt to stop the Metrorail Train to avoid striking and running over Mr. Coulston.

37. As a direct and proximate result of John Doe's aforesaid negligence, for which WMATA is liable, Mr. Coulston was able to access and enter the westbound train track of the

Metro Station and remain on the train track in the path of oncoming Metrorail trains resulting in his being hit by a Metrorail Train and killed.

38. As a direct and proximate result of John Doe 2's aforesaid negligence, for which WMATA is liable, Mr. Coulston was struck and killed by the Metrorail Train operated by John Doe 2.

**COUNT I**
**(Wrongful Death: Washington Area Metropolitan Transit Authority)**

39. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

40. All acts and omissions of Defendant's agent, servant, and/or employee, John Doe, were carried out within the scope of his employment and/or agency with WMATA (while performing a proprietary function as an employee of WMATA), rendering WMATA legally and statutorily liable.

41. All acts and omissions of Defendant's agent, servant, and/or employee, John Doe 2, were carried out within the scope of his employment and/or agency with WMATA (while performing a proprietary function as an employee of WMATA), rendering WMATA legally and statutorily liable.

42. Defendant, through its agent, servant, and/or employee, John Doe, owed a duty of care to Mr. Coulston to oversee, operate, manage and maintain the Metro Station with the degree of care and skill that a reasonably competent station manager would have exercised under similar circumstances, and to comply with all applicable Safety Rules and Procedures and SOPs.

43. Defendant, through its agent, servant, and/or employee, John Doe 2, owed a duty of care to Mr. Coulston to operate the Metrorail Train in a safe and prudent manner and with the degree of care and skill that a reasonably competent train operator would have exercised under

similar circumstances, and to comply with all applicable Safety Rules and Procedures and SOPs while operating the Metrorail Train.

44. At all relevant hereto, John Doe was required to comply with WMATA's "Metrorail Safety Rules and Procedures Handbook," dated September 3, 2010 ("WMATA SRPHs").

45. At all relevant hereto, WMATA SOP 25.4, entitled "Responsibilities" states at WMATA SOP 25.4.4 "Station Managers shall be responsible for following all sections of this SOP."

46. At all times relevant hereto, WMATA SOP 25.5.1.1 required that "Station Managers, observing or being notified of a person falling to the track, shall notify the ROCC immediately, by dialing zero on the telephone in the kiosk or by radio, and request the removal of third rail power on the affected track."

47. At all times relevant hereto, WMATA SOP 25.5.1.2 required that "The Station Manager shall give to the ROCC the following information: 25.51.2.1 Involved track number. 25.25.2.2 Name of Station."

48. At all times relevant hereto, WMATA SOP 25.5.1.2 required that "The ROCC Supervisor shall instruct all Train Operators approaching the area to stop their trains."

49. At all times relevant hereto, WMATA SOP 25.5.3 required that John Doe, as station manager, "The Station Manager shall go immediately to the end of the platform where a train would enter the station on the track involved and be prepared to flag any trains approaching to a stop."

50. At all times relevant hereto, John Doe 2, was required to comply with WMATA's "Metrorail Safety Rules and Procedures Handbook," dated September 3, 2010 ("WMATA SRPHs").

51.     At all times relevant hereto, Section 3 of WMATA SRPH entitled "Operating Rules" required at Section 3.87 "Rail vehicle shall maintain a constant lookout in the direction in which their vehicles are moving. When rail operators observe persons on the roadway, they shall: a. Sound mainline horn to warn those people of the vehicle's approach. If personnel do not physically clear the roadway and appropriate acknowledgment of the horn signal is not received, the vehicle shall be brought to an immediate stop and the train operator shall contact the Rail Operations Command Center (ROCC) and await their instructions before moving the train. Train Operators shall report all near misses to ROCC."

52.     At all times relevant hereto, Section 3.91 of WMATA's Metrorail Safety Rules and Procedures Handbook required that "… Train Operators shall activate the emergency stop pushbutton (mushroom) any time a train must be stopped to prevent a collision with any object or, when the train fails to respond to a call for normal baking from the Master Controller…."Rail vehicle operators shall maintain a constant lookout in the direction in which their vehicles are moving. When rail operators observe persons on the roadway, they shall: a. Sound mainline horn to warn those people of the vehicle's approach. If personnel did not physically clear the roadway and appropriately acknowledgement of the horn signal is not received, the vehicle shall be brought to immediate stop and the train operator shall contact Rail Operations Control Center (ROCC) and await their instructions before moving the train…."

53.     Defendant, WMATA, acting through its agent, servant, and/or employee, John Doe, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

    (a)    Failure to ensure the safety of its visitor and passenger, Mr. Coulston, in the Metro Station;

    (b)    Failure to pay full time and attention to the operation of the Metro Station;

    (c)    Failure to properly monitor the Metro Station;

(d) Failure to keep a proper lookout while in the Station Manager kiosk;

(e) Failure to properly inspect the Metro Station;

(f) Failure to properly monitor security surveillance video;

(g) Failure to recognize that Mr. Coulston was on the train tracks on July 13, 2017 at the Metro Station;

(h) Failure to take steps to ensure the safety of Mr. Coulston;

(i) Failure to notify ROCC that Mr. Coulston was on the tracks of the Metro Station;

(j) Failure to properly monitor the surveillance video of the platform in the Metro Station;

(k) Failure to notify ROCC if the Station Manager kiosk was left unattended;

(l) Allowing Mr. Coulston, because of his diminished mental capacity, to access and enter the train tracks, and remain on the train tracks for an extended period of time without any interventions being taken to safeguard him or to notify ROCC of his presence on the tracks;

(m) Failure to take steps to stop incoming Metrorail trains from entering the station;

(n) Failure to stop the Metrorail train from operating and striking Mr. Coulston;

(o) Failure to pay full time and attention when operating the Metrorail Train on July 13, 2017;

(p) Failure to activate the emergency stop pushbutton prior to striking Mr. Coulston;

(q) Failure to adhere to the above-described WMATA SOPs, which reflect the applicable standards of care;

(r) Failure to comply with all applicable WMATA Safety Rules and Procedures;

(s) Failure to comply with all applicable WMATA Standard Operating Procedures; and

(t) Otherwise failing to take steps to avoid injury to Mr. Coulston.

54. Mr. Coulston's death was a direct and proximate result of the aforesaid negligence of Defendant's agent, servant and/or employee John Doe and John Doe 2.

55. As a direct and proximate result of the negligence of John Doe and John Doe 2, for which WMATA is liable, Mr. Coulston sustained extreme physical and emotional pain and suffering and serious injury resulting in his death.

56. As a direct and proximate result of the negligence of John Doe and John Does 2, for which WMATA is liable, the Estate of Walter Coulston, acting through its Personal Representative seeks all allowable damages pursuant to the Wrongful Death Act.

WHEREFORE, Plaintiff, Stella Coulston, Personal Representative of the Estate of Walter Coulston, and Walter Coulston, Sr., pray for judgment against Defendants Washington Area Metropolitan Transit Authority, John Doe, and John Doe 2, in the amount of Twenty-Five Million Dollars ($25,000,000.00), plus all costs and post-judgment interest at the legal rate of ten percent (10%) per annum from the date of the judgment.

## COUNT II
**(Wrongful Death: John Doe)**

57. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

58. Defendant, John Doe, owed a duty of care to Mr. Coulston to oversee, operate, manage and maintain the Metro Station with the degree of care and skill that a reasonably competent station manager would have exercised under similar circumstances, and to comply with all applicable Safety Rules and Procedures and SOPs.

59. At all times relevant hereto, John Doe was required to comply with WMATA's "Metrorail Safety Rules and Procedures Handbook," dated September 3, 2010 ("WMATA SRPHs").

60. At all times relevant hereto, WMATA SOP 25.4, entitled "Responsibilities" states at WMATA SOP 25.4.4 "Station Managers shall be responsible for following all sections of this SOP."

11

61. At all times relevant hereto, WMATA SOP 25.5.1.1 required that "Station Managers, observing or being notified of a person falling to the track, shall notify the ROCC immediately, by dialing zero on the telephone in the kiosk or by radio, and request the removal of third rail power on the affected track."

62. At all times relevant hereto, WMATA SOP 25.5.1.2 required that "The Station Manager shall give to the ROCC the following information: 25.51.2.1 Involved track number. 25.25.2.2 Name of Station."

63. At all times relevant hereto, WMATA SOP 25.5.1.2 required that "The ROCC Supervisor shall instruct all Train Operators approaching the area to stop their trains."

64. At all times relevant hereto, WMATA SOP 25.5.3 required that John Doe, as station manager, "The Station Manager shall go immediately to the end of the platform where a train would enter the station on the track involved and be prepared to flag any trains approaching to a stop."

65. Defendant, John Doe, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a) Failure to ensure the safety of visitor and passenger, Mr. Coulston, in the Metro Station;

(b) Failure to pay full time and attention to the operation of the Metro Station;

(c) Failure to properly monitor the Metro Station;

(d) Failure to keep a proper lookout while in the Station Manager kiosk;

(e) Failure to properly inspect the Metro Station;

(f) Failure to properly monitor security surveillance video;

(g) Failure to recognize that Mr. Coulston was on the train tracks on July 13, 2017 at the Metro Station;

(h) Failure to take steps to ensure the safety of Mr. Coulston;

(ii) Failure to notify ROCC that Mr. Coulston was on the tracks of the Metro Station;

(j) Failure to properly monitor the surveillance video of the platform in the Metro Station;

(k) Failure to notify ROCC if the Station Manager kiosk was left unattended;

(l) Allowing Mr. Coulston, because of his diminished mental capacity, to access and enter the train tracks, and remain on the train tracks for an extended period of time without any interventions being taken to safeguard him or to notify ROCC of his presence on the tracks;

(m) Failure to take steps to stop incoming Metrorail trains from entering the station;

(n) Failure to stop the Metrorail train from operating and striking Mr. Coulston;

(o) Failure to adhere to the above-described WMATA SOPs, which reflect the applicable standards of care;

(p) Failure to comply with all applicable WMATA Safety Rules and Procedures;

(q) Failure to comply with all applicable WMATA Standard Operating Procedures; and

(r) Otherwise failing to take steps to avoid injury to Mr. Coulston.

66. Mr. Coulston's death was a direct and proximate result of the aforesaid negligence of Defendant John Doe.

67. As a direct and proximate result of the negligence of John Doe, Mr. Coulston sustained extreme physical and emotional pain and suffering and serious injury resulting in his death.

68. As a direct and proximate result of the negligence of John Doe, the Estate of Walter Coulston, acting through its Personal Representative seeks all allowable damages pursuant to the Wrongful Death Act.

WHEREFORE, Plaintiff, Stella Coulston, Personal Representative of the Estate of Walter Coulston, and Walter Coulston, Sr., pray for judgment against Defendants Washington Area

Metropolitan Transit Authority, John Doe, and John Doe 2, in the amount of Twenty-Five Million Dollars ($25,000,000.00), plus all costs and post-judgment interest at the legal rate of ten percent (10%) per annum from the date of the judgment.

## COUNT III
### (Wrongful Death: John Doe 2)

69. The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

70. Defendant, John Doe 2, owed a duty of care to Mr. Coulston to operate the Metrorail Train in a safe and prudent manner and with the degree of care and skill that a reasonably competent train operator would have exercised under similar circumstances, and to comply with all applicable Safety Rules and Procedures and SOPs while operating the Metrorail Train.

71. At all times relevant hereto, John Doe 2, was required to comply with WMATA's "Metrorail Safety Rules and Procedures Handbook," dated September 3, 2010 ("WMATA SRPHs").

72. At all times relevant hereto, Section 3 of WMATA SRPH entitled "Operating Rules" required at Section 3.87 "Rail vehicle shall maintain a constant lookout in the direction in which their vehicles are moving. When rail operators observe persons on the roadway, they shall: a. Sound mainline horn to warn those people of the vehicle's approach. If personnel do not physically clear the roadway and appropriate acknowledgment of the horn signal is not received, the vehicle shall be brought to an immediate stop and the train operator shall contact the Rail Operations Command Center (ROCC) and await their instructions before moving the train. Train Operators shall report all near misses to ROCC."

73. At all times relevant hereto, Section 3.91 of WMATA's Metrorail Safety Rules and Procedures Handbook required that "... Train Operators shall activate the emergency stop

pushbutton (mushroom) any time a train must be stopped to prevent a collision with any object or, when the train fails to respond to a call for normal baking from the Master Controller...."Rail vehicle operators shall maintain a constant lookout in the direction in which their vehicles are moving. When rail operators observe persons on the roadway, they shall: a. Sound mainline horn to warn those people of the vehicle's approach. If personnel did not physically clear the roadway and appropriately acknowledgement of the horn signal is not received, the vehicle shall be brought to immediate stop and the train operator shall contact Rail Operations Control Center (ROCC) and await their instructions before moving the train...."

74. Defendant, John Doe 2, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

    (a) Failure to ensure the safety of its visitor and passenger, Mr. Coulston, in the Metro Station;

    (b) Failure to stop the Metrorail train from operating and striking Mr. Coulston;

    (c) Failure to pay full time and attention when operating the Metrorail Train on July 13, 2017;

    (d) Failure to activate the emergency stop pushbutton prior to striking Mr. Coulston;

    (e) Failure to adhere to the above-described WMATA SOPs, which reflect the applicable standards of care;

    (f) Failure to comply with all applicable WMATA Safety Rules and Procedures;

    (g) Failure to comply with all applicable WMATA Standard Operating Procedures; and

    (h) Otherwise failing to take steps to avoid injury to Mr. Coulston.

75. Mr. Coulston's death was a direct and proximate result of the aforesaid negligence of Defendant's agent, servant and/or employee John Doe and John Doe 2.

76. As a direct and proximate result of the negligence of John Doe and John Doe 2, for which WMATA is liable, Mr. Coulston sustained extreme physical and emotional pain and suffering and serious injury resulting in his death.

77. As a direct and proximate result of the negligence of John Doe and John Does 2, for which WMATA is liable, the Estate of Walter Coulston, acting through its Personal Representative seeks all allowable damages pursuant to the Wrongful Death Act.

WHEREFORE, Plaintiff, Stella Coulston, Personal Representative of the Estate of Walter Coulston, and Walter Coulston, Sr., pray for judgment against Defendants Washington Area Metropolitan Transit Authority, John Doe, and John Doe 2, in the amount of Twenty-Five Million Dollars ($25,000,000.00), plus all costs and post-judgment interest at the legal rate of ten percent (10%) per annum from the date of the judgment.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: _____
Karl J. Protil, Jr. (DC Bar #447934)
12505 Park Potomac Avenue
6th Floor
Potomac, Maryland 20854
Tel: (301) 230-5200
Fax: (301) 230-2891
kprotil@shulmanrogers.com

**JURY TRIAL REQUESTED**

Plaintiffs, by counsel, respectfully request a trial by jury on all issues.

By: _____
Karl J. Protil, Jr.